# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GENOVA BURNS LLC**<br>Angelo J. Genova, Esq.<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>Matthew I.W. Baker, Esq.<br>agenova@genovaburns.com<br>dstolz@genovaburns.com<br>dclarke@genovaburns.com<br>mbaker@genovaburns.com<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ 07920<br>Tel: (973) 467-2700<br>Fax: (973) 467-8126<br>*Proposed Local Counsel to the Official Committee of Talc Claimants* | **BROWN RUDNICK LLP**<br>David J. Molton, Esq.<br>Robert J. Stark, Esq.<br>Michael Winograd, Esq.<br>Jeffrey L. Jonas, Esq.<br>dmolton@brownrudnick.com<br>rstark@brownrudnick.com<br>mwinograd@brownrudnick.com<br>jjonas@brownrudnick.com<br>Seven Times Square<br>New York, NY 10036<br>Tel: (212) 209-4800<br>Fax: (212) 209-4801<br><br>and<br><br>Sunni P. Beville, Esq.<br>sbeville@brownrudnick.com<br>One Financial Center<br>Boston, MA 02111<br>Tel: (617) 856-8200<br>Fax: (617) 856-8201<br>*Proposed Co-Counsel for the Official Committee of Talc Claimants* |
| **BAILEY GLASSER LLP**<br>Brian A. Glasser, Esq.<br>Thomas B. Bennett, Esq.<br>bglasser@baileyglasser.com<br>tbennett@baileyglasser.com<br>105 Thomas Jefferson St. NW, Suite 540<br>Washington, DC 20007<br>Tel: (202) 463-2101<br>Fax: (202) 463-2103<br>*Proposed Co-Counsel for the Official Committee of Talc Claimants* | **OTTERBOURG P.C.**<br>Melanie L. Cyganowski, Esq.<br>Adam C. Silverstein, Esq.<br>Jennifer S. Feeney, Esq.<br>mcyganowski@otterbourg.com<br>asilverstein@otterbourg.com<br>jfeeney@otterbourg.com<br>230 Park Avenue<br>New York, NY 10169<br>Tel: (212) 905-3628<br>Fax: (212) 682-6104<br>*Proposed Co-Counsel for the Official Committee of Talc Claimants* |

<table>
<tr><td>

**PARKINS LEE & RUBIO LLP**
Leonard M. Parkins, Esq.
Charles M. Rubio, Esq.
lparkins@parkinslee.com
crubio@parkinslee.com
Pennzoil Place
700 Milan St., Suite 1300
Houston, TX  77002
Tel: (713) 715-1666
*Proposed Special Counsel to the Official*
*Committee of Talc Claimants*

</td><td>

**MASSEY & GAIL LLP**
Jonathan S. Massey, Esq.
jmassey@masseygail.com
100 Main Ave. SW, Suite 450
Washington, DC  20024
Tel: (202) 652-4511
Fax: (312) 379-0467
*Proposed Special Counsel for the Official*
*Committee of Talc Claimants*

</td></tr>
</table>

|  |  |
|---|---|
| In re:<br><br>**LTL MANAGEMENT, LLC,**<br><br>      Debtor. | Chapter 11<br><br>Case No.: 21-30589(MBK)<br><br>Honorable Michael B. Kaplan |
| **LTL MANAGEMENT LLC,**<br><br>      Plaintiff,<br><br> v.<br><br>**THOSE PARTIES LISTED ON APPENDIX A TO COMPLAINT** and **JOHN AND JANE DOES 1-1000,**<br><br>      Defendants. | Adv. Pro. No. 21-03032 (MBK) |

**MEMORANDUM OF LAW IN SUPPORT OF THE OFFICIAL COMMITTEE OF TALC CLAIMANTS' MOTION FOR WITHDRAWAL OF THE REFERENCE OF ADVERSARY PROCEEDING NO. 21-03032 (MBK)**

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ........................................................................................ 1

**BACKGROUND** ............................................................................................................ 7

    A.   J&J Resorts To Structuring As "Liability Management" ................................. 7

    B.   Bankruptcy Filing And Adversary Proceeding. ............................................. 8

    C.   Transfer Of Venue To District Of New Jersey ............................................ 10

**ARGUMENT** ............................................................................................................... 10

    A.   Withdrawal Is Appropriate Under The *Pruitt* Factors .................................. 11

    B.   Other Considerations, On Balance, Weigh In Favor Of Withdrawal ............................ 14

**CONCLUSION** ............................................................................................................. 17

i

## TABLE OF AUTHORITIES

**Cases**

*A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986) .................................................. 12

*Calascibetta v. Pension Fin. Servs., Inc. (In re U.S. Mortg. Corp.)*, Civil Action Nos. 2:11-cv-07222 (DMC)(JAD), 2:11–cv–07223 (DMC) (JAD), 2012 WL 1372284 (D.N.J. Apr. 19, 2012)........................................................................................................................................ 11, 13

*Drs. Assocs., Inc. v. Desai*, No. Civ. Action No. 10-575, 2010 WL 3326726 (D.N.J. Aug. 23, 2010).......................................................................................................................................... 16

*Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992 (5th Cir. 1985)............................ 11

*In re Combustion Engineering, Inc.*, 391 F.3d 190 (3d Cir. 2004)............................................... 16

*In re Federal–Mogul Global, Inc.*, 300 F.3d 368 (3d Cir. 2002)................................................. 16

*In re LightSquared Inc.*, No. 14 Civ. 8550(RMB), 2014 WL 6386734 (S.D.N.Y. Nov. 10, 2014) ............................................................................................................................................ 17

*In re Pruitt*, 910 F.2d 1160 (3d Cir. 1990).................................................................................. 11

*In re Recoton Corp.*, No. 04 Civ. 2466(DLC), 2004 WL 1497570 (S.D.N.Y. July 1, 2004)....... 17

*Innovasystems, Inc. v. Proveris Scientific Corp.*, Civil Action No. 13–05077, 2013 WL 5539288 (D.N.J. Oct. 7, 2013) ................................................................................................................ 15

*Karagjozi v. Bruck*, Civ. No. 17-6305, 2017 WL 4155104 (D.N.J. Sept. 20, 2017)................... 15

*Kohn v. Haymount Ltd. P'ship, LP (In re Int'l Benefits Grp., Inc.)*, Civil Action No. 06-2363(KSH), 2006 WL 2417297 (D.N.J. Aug. 21, 2006) .................................................... 10, 14

*Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194 (3d Cir. 1991).......................... 12

*McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506 (3d Cir. 1997)............................................. 11

*Official Committee of Asbestos Claimants v. G-I Holdings, Inc. (In re G-I Holdings, Inc.)*, 295 B.R. 211 (D.N.J. 2003)............................................................................................... 11, 12, 15

*Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984) .................................................................. 16

*Pan Am Corporation, et al. v. Delta Air Lines, Inc. (In re Pan Am Corp.)*, 163 B.R. 41 (S.D.N.Y.1993) ...................................................................................................................... 7, 15

*Pittsburgh Corning Corp. v. Mingo (In re Pittsburgh Corning Corp.)*, 277 B.R. 74 (Bankr. W.D. Pa. 2002) ........................................................................................................................ 7, 15

*Schlein v. Golub (In re Schlein)*, 188 B.R. 13 (E.D. Pa. 1995) ....................................................... 14

*Katz v. Karagjozi (In re Kara Homes, Inc.)*, Bankruptcy No. 06-19626 (MBK), Adv. Proc. No. 08-2406 (MBK), Civil Action No. 09-1775 (MLC), 2009 WL 2223035 (D.N.J. July 22, 2009) ........................................................................................................................................ 15

*NDEP Corp. v. Handl-It, Inc. (In re NDEP Corp.)*, 203 B.R. 905 (D. Del. 1996) ....................... 12

*SPIC v. Bernard L. Madoff Inv. Secs. LLC*, 486 B.R. 579 (S.D.N.Y. 2013) ................................ 13

*Stanford v. Foamex L.P.*, Civil Action No. 07-4225, 2009 WL 1033607 (E.D. Pa. Apr. 15, 2009) ........................................................................................................................................ 12

*Stanziale v. Bear Stearns, Inc. (In re Dwek)*, No. 07-11757 (KCF), Civil Action No. 09-4833 (FLW), 2010 WL 2545174 (D.N.J. June 18, 2010) .......................................................... 14, 15

*Sullivan v. Maryland Casualty Co. (In re Ramex Int.'l., Inc.)*, 91 B.R. 313 (E.D. Pa. 1988) 10, 16

*Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995) ........................................................ 16

*Torkelsen v. Maggio (In re Guild and Gallery Plus, Inc.)*, 72 F.3d 1171 (3d Cir. 1996) ............. 15

*Troisio v. Poirier (In re U.S.A. Floral Products, Inc.)*, No. 01–1230 (MFW), ADV. 03–52514, Civ.A. 05–00039–KAJ, 2005 WL 3657096 (D. Del. July 1, 2005) ......................................... 15

*United Orient Bank v. Green*, 200 B.R. 296 (S.D.N.Y. 1996) ..................................................... 15

**Statutes**

11 U.S.C. § 105 ............................................................................................................................. 16

11 U.S.C. § 362(a) ........................................................................................................................ 16

28 U.S.C. § 1334(a) ...................................................................................................................... 10

28 U.S.C. § 1334(b) ...................................................................................................................... 10

28 U.S.C. § 157(a) ........................................................................................................................ 10

28 U.S.C. § 157(b)(5) .................................................................................................................... 13

28 U.S.C. § 157(d) ........................................................................................................................ 11

The Official Committee of Talc Claimants (the "**Official Committee**") appointed in the above-referenced chapter 11 case (the "**Bankruptcy Case**") of LTL Management LLC (the "**Debtor**"), hereby submits this memorandum of law in support of its motion (the "**Motion**") for the entry of an Order of the United States District Court for the District of New Jersey (the "**Court**") withdrawing the reference of the above-captioned adversary proceeding (the "**Adversary Proceeding**") (Adv. Pro. No. 21-03032 (MBK)), pending in the United States Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Court**").[1]  In support of the Motion, the Official Committee respectfully states as follows:

## PRELIMINARY STATEMENT

The Official Committee seeks withdrawal of the reference of only the Adversary Proceeding (*i.e.*, not the entire Bankruptcy Case) pending with the Bankruptcy Court.  The Adversary Proceeding was only recently filed and, shortly thereafter, transferred to this District. It involves a discrete and finite issue-namely, whether talcum powder-related litigation against non-debtor entities, including Johnson & Johnson ("**J&J**"), should be enjoined as a consequence of the Debtor's bankruptcy filing.  Resolution of the Adversary Proceeding requires no specialized bankruptcy knowledge.   Rather, knowledge of the facts and circumstances pertinent to the underlying talcum powder-related claims, the separate liabilities of Johnson & Johnson, affiliates and others, and the long history of talcum powder-related liabilities are key.  As the presiding MDL Judge over the parallel proceeding, *In Re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Litigation,* MDL 2738 (MDL 2738) (the "**MDL**"), this Court has that knowledge.  The Bankruptcy Court does not.  As emphasized by the North Carolina Bankruptcy Court in transferring venue to this District, this Court is uniquely qualified to rule on

---

[1]    The Official Committee is a party to the adversary proceeding by virtue of a Stipulation and Order between the Debtor and the Official Committee entered on November 24, 2021. Adv. Pro. Dkt. No. 109.

issues respecting talcum powder-related claims, including causation, liability, and (if necessary) estimation. *See Order Transferring Case to the District of New Jersey* (the "**Transfer Order**"), at 5 [Dkt. No. 416] (observing that this Court (i) has "devoted significant time and resources over the past five years litigating" in the MDL; (ii) "has resolved important issues and gained an understanding of potential liability, causation, defenses, and settlement discussions"; and (iii) "presents a unique opportunity to help work towards an estimation of present and future claims that could take place in any future bankruptcy proceeding.").

The Adversary Proceeding was initiated by the Debtor, a non-operating "special purpose vehicle" (an "**SPV**") created by J&J and its consumer products affiliate ("**Old JJCI**") a mere two days before its October 14, 2021 bankruptcy filing. This was done by so-called "divisive merger" under Texas law to wall off talcum powder-related tort liability from the vast financial resources of J&J and its non-debtor affiliates. In short, Old JJCI was split into two: its operating assets and business were transferred to a "GoodCo" (which later became "**New JJCI**"), and its talcum powder-related liabilities were transferred to a "BadCo" (the Debtor), along with a handful of non-operating assets that were designed solely "to effectuate a bankruptcy filing and have no other business purpose." *See Transfer Order*, at p. 9.

Almost immediately, the Debtor reincorporated in North Carolina in an effort "to manufacture venue and . . . outsmart the purpose of the [Bankruptcy Code's venue] statute." *See Id.*, at p. 10. Two days after forming, the Debtor, and only the Debtor (*i.e.*, not J&J, Old JJCI, or any other affiliate or entity), filed for bankruptcy in the Western District of North Carolina in, as the North Carolina Bankruptcy Court noted, an apparent attempt to exploit the Fourth Circuit's stringent standard for dismissal as a "bad faith" bankruptcy filing. *See id.*, at pp. 9–10 ("[T]he Debtor's actions indicate a preference to file bankruptcy in this district, likely due to the Fourth

Circuit's two-prong dismissal standard and Judge Hodges's estimation ruling in the *Garlock* case.").

Upon the Debtor's bankruptcy filing, J&J and Old JJCI announced to the world – through securities filings, press releases, and notices filed on court dockets throughout the country – that the bankruptcy filing of its newly-created SPV effected a stay of all talcum powder-related litigation against J&J, Old JJCI, and hundreds of other non-debtor entities.[2]

The Bankruptcy Code, of course, does not automatically stay litigation against non-debtors, and so, a few days after filing for bankruptcy, the Debtor filed an "emergency motion" seeking to immediately stay all talcum powder-related litigation against J&J, Old JJCI, and the other non-debtor entities.  *See Debtor's Emergency Motion to Enforce the Automatic Stay Against Talc Claimants Who Seek to Pursue Their Claims Against the Debtor and Its Non-Debtor Affiliates* [Dkt. No. 44].  The Debtor sought this sweeping relief through a procedurally deficient contested matter on effectively no notice to tort claimants – who, it bears observing, are the Debtor's *only* creditors.  *See Transfer Order*, at p. 2 ("The Debtor's only liabilities are Old JJCI's liabilities arising from talc-related claims.").

The Bankruptcy Court instructed the Debtor to correct its procedural error by filing an adversary proceeding seeking injunctive relief, which Adversary Proceeding is the subject of this withdrawal request.

Given, among other things, the Debtor's lack of any contacts with North Carolina and the extensive contacts with New Jersey (particularly, more than 36,000 pending talcum powder-related

---

[2]    Counsel for Johnson & Johnson advised this Court (as well as Special Master Joel Schneider) that the Debtor's bankruptcy filing automatically stayed these proceedings against all non-Debtor J&J Defendants in this MDL. *See* Exhibit 1 annexed hereto (October 15, 2021 email from Susan Sharko, Esq. to Chief Judge Freda Wolfson); *see also* Exhibit 2 (October 25, 2021 email from Susan Sharko, Esq. to Judge Joel Schneider).  The same representation was made to courts throughout the country, including the United States Supreme Court. *See* Exhibit 3 (*Notice of Bankruptcy Filing and Stay* filed with the Supreme Court of the United States, No. 21-348).

ovarian cancer and mesothelioma cases), the North Carolina Bankruptcy Court *sua sponte* ordered the Debtor and related parties to explain why venue of the Bankruptcy Case should not be transferred. *See* Oct. 22, 2021 Hr'g Tr. at 216:17–218:12. The North Carolina Bankruptcy Court, thereafter, entered its order transferring venue to this District, emphasizing this Court's familiarity with the underlying talcum powder-related claims through the 35,000 ovarian cancer cases pending in the MDL, and the fact that many of the 430 pending mesothelioma cases are in New Jersey state court.

Before entering the transfer order, the North Carolina Bankruptcy Court issued a short-term, 60-day bridge injunction in the Adversary Proceeding to prevent the Bankruptcy Case from arriving "on fire."[3] That bridge injunction will expire on January 14, 2022, and the Debtor will assuredly seek an extension. The Debtor is, in sum, an insignificant legal entity set up solely for bankruptcy, not because it has any need for bankruptcy, but instead to serve as a passive conduit through which J&J – a conglomerate of monumental size, power, and wealth *despite* its well-known current and future talc liability – can seize the injunctive benefits of Chapter 11 without having to file for Chapter 11.

Through this Motion, the Official Committee seeks entry of an Order withdrawing the reference with respect to the Adversary Proceeding. Each of the pertinent factors set out by the Third Circuit in *In re Pruitt* weighs strongly in favor or withdrawal:

(i)    <u>Economical Use of Resources</u>. The underlying claims implicated by the Adversary Proceeding are tort claims related to the use of J&J's and Old JJCI's talc products.

---

[3]    *See* Nov. 5, 2021 Hr'g Tr. at 143:12–18 ("But the point is that I think that, particularly given that I am moving the case, the last thing I want to do is send it with it on fire to the, to the recipient court. And so we need to, to slow down just for a little bit here and let a new judge take a look at this situation, read what we've written before, and then get the other constituencies on board before we go any further with that.").

The gravamen of the Adversary Proceeding concerns whether there are direct, non-derivative claims against J&J, Old JJCI, and other non-debtors, and whether the continued litigation of such claims would adversely affect the Debtor. Familiarity with and understanding of the underlying claims (*e.g.*, causation, liability, etc.) will be critically important.[4] Specialized bankruptcy knowledge will not. This Court has gained considerable knowledge and experience with the facts and circumstances having direct bearing on the underlying claims. This Court also possesses significant factual context for the series of transactions J&J orchestrated in October of 2021 that resulted in the creation of the Debtor two days before the bankruptcy filing, and the assertion now that, as a result of those transactions, continued litigation against J&J and the other non-debtor entities would impair the Debtor's "reorganization." As a result, this Court is uniquely suited to adjudicate the relief requested in the Adversary Proceeding. This is particularly true given the impact of this Adversary Proceeding on the MDL. In view of this Court's history with the underlying claims, it should be responsible for determining the extent to which these claims are stayed.

(ii)    <u>Uniformity in Administration</u>. Withdrawing the reference will promote uniformity in administration. First, analysis of the claims would be before a Court with significant knowledge of the relevant factual background. Second, the underlying claims cannot be resolved by the Bankruptcy Court should this case proceed. The Official Committee intends to seek dismissal of the Bankruptcy Case, but if that relief is not granted, under § 157(b)(5), the underlying claims would need to be

---

[4]    *See Transfer Order*, at pp. 5–6.

resolved in the District Court.  Withdrawing the reference would ensure that all substantive analysis of the underlying claims would be conducted by one Court.

(iii)    <u>Expediting Bankruptcy Process</u>. The District Court's experience with the facts and circumstances surrounding the underlying claims will expedite the Adversary Proceeding.  In contrast to the Bankruptcy Court, the District Court will not have to "get up to speed" on the technical or complex aspects of the underlying claims. Further, withdrawal of only the Adversary Proceeding will enable the balance of the Bankruptcy Case to proceed in due course before the Bankruptcy Court, if not more expeditiously without the need for the Bankruptcy Court to devote resources to the Adversary Proceeding. The determination of the Adversary Proceeding will have far-reaching consequences for the thousands of living victims, who do not have the benefit of time, and the families of the deceased victims who have cases pending in state and federal courts around the country. The benefit of the efficiency gained from the District Court's background cannot be overstated.

(iv)    <u>Forum Shopping and Confusion</u>.  The Official Committee is seeking withdrawal of the reference because it believes that this Court is best positioned to analyze the underlying claims and adjudicate the relief requested in the Adversary Proceeding. The only forum shopping in this case was perpetrated by the Debtor when it manufactured venue in North Carolina.

The timing of this request further favors withdrawal.  The Adversary Proceeding was initiated only weeks ago and transferred to this District just last week.  No significant pre-trial motion practice, discovery, or hearings have occurred in the matter.  The Bankruptcy Court has not invested meaningful time or resources into the dispute.  And, given that the Debtor has been

litigating in the District Court over many of the underlying claims for years, it will not be prejudiced by withdrawal.  Finally, although the North Carolina Bankruptcy Court included a finding that the Adversary Proceeding was a "core" proceeding, that finding, by its terms, is not binding on future courts and, in any event, "core" proceedings can nevertheless be withdrawn under circumstances such as this.  *See, e.g.*, *Pittsburgh Corning Corp. v. Mingo (In re Pittsburgh Corning Corp.)*, 277 B.R. 74, 78 (Bankr. W.D. Pa. 2002) (noting that withdrawal of the reference of core bankruptcy proceedings is permissible "'based on a finding by the Court that the withdrawal of reference is essential to preserve a higher interest' (quoting *Pan Am Corporation, et al. v. Delta Air Lines, Inc. (In re Pan Am Corp.)*, 163 B.R. 41, 43 (S.D.N.Y.1993))).

Accordingly, the Official Committee respectfully requests that this Court enter an order withdrawing the reference for the Adversary Proceeding.

## BACKGROUND

### A. **J&J Resorts To Structuring As "Liability Management".**

The Debtor was created only days before the commencement of its Bankruptcy Case through a restructuring under Texas law referred to as a "divisive merger."  On October 12, 2021, the Debtor's predecessor, Johnson & Johnson Consumer, Inc. (Old JJCI), converted from a New Jersey entity into a Texas limited liability company.  Then, through the use of Texas's divisive merger statute, Old JJCI ceased to exist, splitting into two successor entities and allocated its assets to one (GoodCo) and liabilities to the other (BadCo, or, in this case, the Debtor).  Because Texas law requires GoodCo to remain secondarily liable on BadCo's liabilities (a fact that would have defeated, in part, the purpose of the divisive merger), J&J took the further step of merging GoodCo into a New Jersey corporation, New JJCI, which is now the Debtor's immediate parent company. *See Declaration of John K. Kim in Support of First Day Pleadings* (the "**First Day Declaration**"), at ¶¶ 19, 23 [Dkt. No. 5].  Following the divisive merger, the Debtor was re-domiciled in North

Carolina in an effort to manufacture jurisdiction in North Carolina and avail itself of the Fourth

Circuit's heightened standard for "bad faith" dismissals.  *See Transfer Order*, at pp. 9–10.

As a result of the divisive merger, the Debtor received all of Old JJCI's talcum powder-

related liability along with certain non-operating assets befitting a passive SPV – a royalty stream,

a $6 million bank deposit, and a limited indemnity right from J&J and Old JJCI.  *Id.*  All other

business, operating, and other assets and liabilities of Old JJCI were ultimately assigned to New

JJCI.  *Id.*

### B.  Bankruptcy Filing And Adversary Proceeding.

On October 14, 2021 (the "**Petition Date**"), the Debtor filed for relief under chapter 11 of

title 11 of the United States Code (the "**Bankruptcy Code**") with the United States Bankruptcy

Court for the Western District of North Carolina.  On October 18, 2021, the Debtor filed the

*Debtor's Emergency Motion to Enforce the Automatic Stay against Talc Claimants Who Seek to*

*Pursue Their Claims Against the Debtor and Non-Debtor Affiliates* (the "**Emergency Stay**

**Motion**").  [Dkt. No. 44].  The Emergency Stay Motion sought entry of interim and final orders

applying the automatic stay of § 362(a) of the Bankruptcy Code to all talcum powder-related

claims asserted against J&J, New JJCI, and "any other affiliate of the Debtor. . . ."

Ultimately, the North Carolina Bankruptcy Court deemed the Emergency Stay Motion as

a request for a temporary restraining order – which was denied – and instructed the Debtor to

proceed by an adversary proceeding and to file a complaint seeking the injunctive relief requested

in the Emergency Stay Motion.  On October 21, 2021, the Debtor filed a complaint (the

"**Complaint**") commencing the instant Adversary Proceeding, seeking to stay all talcum powder-

related claims of the Defendants against 490 non-debtor affiliates, including J&J and New JJCI;

approximately 140 retailers; and approximately 100 insurance companies (the "**Alleged Protected**

**Parties**"). The Debtor also sought, by way of the Complaint, a preliminary injunction and temporary restraining order in favor of the same parties.

On the same day, the Debtor filed the *Debtor's Motion for an Order (I) Declaring that the Automatic Stay Applies to Certain Actions Against Non-debtors or (ii) Preliminarily Enjoining such Actions and (iii) Granting a Temporary Restraining Order Pending a Final Hearing* (the "**Preliminary Injunction Motion**"), which sought the same relief requested in the Complaint on a preliminary basis. Adv. Pro. Dkt. No. 2. In the Preliminary Injunction Motion, the Debtor argued that extension of the automatic stay to the Alleged Protected Parties was appropriate because either (a) the Alleged Protected Parties share such an identity of interest with the Debtor that the Debtor is, in effect, the real-party defendant, or (b) the claims are property of the Debtor's estate. Thus, such an action is expressly enjoined by § 362(a)(1) because it constitutes an "action or proceeding against the debtor" to recover a prepetition claim. *See Preliminary Injunction Motion*, at p. 5.

After a two-day evidentiary hearing, the North Carolina Bankruptcy Court entered an order granting a short-term, 60-day preliminary injunction ("**PI Order**"). Adv. Pro. Dkt. No. 102. The record of the November 10, 2021 hearing is incorporated into the PI Order. *Id.* The Order is expressly "without prejudice" to the presiding court's authority to modify or terminate the stay or injunction, including based on a later determination that claims against the Alleged Protected Parties are *not* claims "against the debtor" subject to the stay. *Id.* ¶¶ 5, E. As the North Carolina Bankruptcy Court explained on November 10, 2021, it did not want to bind the hands of any subsequent judge ruling on the preliminary injunction:

> So what I'm effectively doing is making a preliminary ruling that says that the stay is in effect on the talc-based claims as against not just the debtor and as against Old JJCI, but also as against J&J, the other protected parties, including the retailers.
>
> Now that's painting with a very broad brush. We obviously have not had the occasion to go through 38,000 different complaints in, in cases and look at the facts and determine whether all of this is really, in effect, a claim that can be said against

the debtor.  To that extent, I'm sure my successor will take the position that they
have the right to go back and, and parties may move for exclusion from that.  And
if they can show that this is not related to the debtor and the debtor's products and
operations, then likely they can get out from under it.

Nov. 10, 2021 Tr., 136: 4–18.

### C. <u>Transfer Of Venue To District Of New Jersey</u>.

On November 16, 2021, the North Carolina Bankruptcy Court entered an order transferring

the Debtor's Case, including the Adversary Proceeding, to the District of New Jersey (the

"**<u>Transfer Order</u>**").   Dkt. No. 416.   Among the key reasons cited by the North

Carolina Bankruptcy Court for the transfer was the existence of the MDL, which has been pending before

this Court for approximately five (5) years.  *Id.*  The North Carolina Bankruptcy Court noted that

the Debtor's *only* liabilities are talcum powder-related claims against Old JJCI.   As the North

Carolina Bankruptcy Court concluded, moving the Debtor's Case to this District would best serve

administration of the estate in part because of this District Court's familiarity with many of the

facts and circumstances germane to the underlying talcum powder-related claims.

### <u>ARGUMENT</u>

The District Court has original jurisdiction over all bankruptcy cases and proceedings

thereunder.  28 U.S.C. § 1334(a), (b).  It also has discretion to refer bankruptcy proceedings to the

district's bankruptcy courts.  28 U.S.C. § 157(a); *see e.g.*, *Sullivan v. Maryland Casualty Co. (In*

*re Ramex Int.'l., Inc.)*, 91 B.R. 313, 315 (E.D. Pa. 1988).  Exercising this discretion, the District

Court of New Jersey has "referred all proceedings arising under Title 11 to the bankruptcy court

pursuant to a standing order of reference dated July 13, 1984."  *Kohn v. Haymount Ltd. P'ship, LP*

*(In re Int'l Benefits Grp., Inc.)*, Civil Action No. 06-2363(KSH), 2006 WL 2417297, at *1 (D.N.J.

Aug. 21, 2006).

This Court nevertheless retains discretion to withdraw the reference of this Adversary Proceeding to this District's Bankruptcy Court "for cause shown." 28 U.S.C. § 157(d).[5] Although "cause" for permissive withdrawal is not statutorily defined, the Third Circuit Court of Appeals in *In re Pruitt* enumerated certain non-exclusive factors for a court to consider. These include: (i) economical use of resources, (ii) uniformity of administration, (iii) expediting the bankruptcy process, and (iv) reducing forum shopping. *See In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990) (citing *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985)). Other factors considered by courts are the timing of the request, and whether the matter is a "core" or "non-core" proceeding within the meaning of § 157(b)-(c). *See, e.g.*, *Calascibetta v. Pension Fin. Servs., Inc. (In re U.S. Mortg. Corp.)*, Civil Action Nos. 2:11-cv-07222 (DMC)(JAD), 2:11–cv–07223 (DMC) (JAD), 2012 WL 1372284, at *2 (D.N.J. Apr. 19, 2012); *Official Committee of Asbestos Claimants v. G-I Holdings, Inc. (In re G-I Holdings, Inc.)*, 295 B.R. 211, 216 (D.N.J. 2003). Application of these factors strongly militates in favor of withdrawal.

## A. **Withdrawal Is Appropriate Under The *Pruitt* Factors.**

Each of the *Pruitt* factors strongly favors withdrawal. First, withdrawing the reference would promote the economical use of resources. Adjudication of the Adversary Proceeding requires analysis of the underlying tort claims and determining whether such claims are direct, non-derivative claims, and whether the continued litigation of such claims would adversely impact the Debtor's estate. *See McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 509 (3d Cir. 1997) ("As the case law demonstrates, courts have found 'unusual circumstances' where 'there is such

---

[5]    28 U.S.C. § 157(d) provides, in relevant part, "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). While § 157(d) also provides for mandatory withdrawal where a proceeding requires "consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce," the Official Committee is not seeking mandatory withdrawal by this Motion.

identity between the debtor and the third-party defendant that the debtor may be said to be the real

party defendant and that a judgment against the third-party defendant will in effect be a judgment

or finding against the debtor.'" (quoting *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th

Cir. 1986))).  This analysis does not require specialized bankruptcy knowledge.  Rather, it requires

knowledge and familiarity with the underlying claims.  This is particularly true because the

standard is a high one, and will require close scrutiny of the underlying claims at issue, as well as

the circumstances under which the alleged identity of interest between the Alleged Protected

Parties and the Debtor arose.  *See e.g.*, *Stanford v. Foamex L.P.*, Civil Action No. 07-4225, 2009

WL 1033607, *2 (E.D. Pa. Apr. 15, 2009) ("unusual circumstances" did not permit automatic stay

to extend to non-debtor entities because "plaintiff in this action alleges that each of the non-

bankrupt defendants is independently liable"); *see also Maritime Elec. Co., Inc. v. United Jersey

Bank*, 959 F.2d 1194, 1205 (3d Cir. 1991) ("[T]he automatic stay is not available to non-bankrupt

co-defendants of a debtor even if they are in a similar legal or factual nexus with the debtor.").

The Bankruptcy Court does not have that knowledge.  This Court already does. In that regard, this

Court is in the best position to determine whether and to what extent the MDL, pending before this

Court for the last five (5) years, as well as the thousands of other cases asserting similar claims,

should be stayed.   Accordingly, withdrawing the reference would create significant efficiencies

for the estate and its creditors, and would also serve judicial economy.  *See NDEP Corp. v. Handl-

It, Inc. (In re NDEP Corp.)*, 203 B.R. 905, 913 (D. Del. 1996) (noting that a court considers

"whether withdrawal would serve judicial economy").   Further, withdrawing the reference is

consistent with this Court's view that coordination between the bankruptcy court and district court

is "essential to ensuring efficient resolution of mass tort bankruptcies" like this one. *G-I Holdings*,

295 B.R. at 216.

Second, withdrawing the reference will promote uniformity in administration. Withdrawal would ensure that all substantive analysis of the underlying claims would be before this Court, which possesses unique and significant knowledge of the relevant factual background. Further, withdrawal of the Adversary Proceeding will not adversely impact administration of the balance of the Bankruptcy Case, which can proceed in due course before the Bankruptcy Court. *See U.S. Mortg. Corp.*, 2012 WL 1372284, at *3. While the Official Committee intends to seek dismissal of the Bankruptcy Case, if that relief is not granted, the underlying claims would otherwise need to be resolved in the District Court. *See* 28 U.S.C. § 157(b)(5) (providing that personal injury tort and wrongful death claims in a bankruptcy case must be tried either in in the district court in which the bankruptcy case is pending or in the district court in the district in which the claim arose, as determined by the district court in which the case is pending). Under these circumstances, uniformity would result from this Court taking direct control over any preliminary injunction determinations on what lawsuits should proceed and whether any party, including J&J and New JJCI should be accorded "protected status" as requested by the Debtor.

Third, withdrawal of the reference will expedite the bankruptcy process. In contrast to the Bankruptcy Court, this Court is already well-versed with many of the facts implicated by many of the underlying claims. Indeed, courts often look to which court has the most familiarity with the underlying facts and issues to determine where the matter would be most expediently heard. *See, e.g.*, *SPIC v. Bernard L. Madoff Inv. Secs. LLC*, 486 B.R. 579, 584 (S.D.N.Y. 2013) (noting that the District Court was "intimately familiar with the nature of" the underlying claims subject to an action to enforce the automatic stay, and was "therefore in a best position to analyze the Trustee's Stay Application and efficiently render a decision that will not unnecessarily delay" the bankruptcy case or the action to be stayed). Here, that familiarity is with this Court. Because venue of the

13

Bankruptcy Case and the Adversary Proceeding were only recently transferred to the Bankruptcy Court, the Bankruptcy Court has not yet invested significant time or resources in connection with the Adversary Proceeding. *Cf., e.g., Stanziale v. Bear Stearns, Inc. (In re Dwek)*, No. 07-11757 (KCF), Civil Action No. 09-4833 (FLW), 2010 WL 2545174, at *4 (D.N.J. June 18, 2010) (noting that, in this particular case, economy favored the bankruptcy court, which had presided over the bankruptcy case since its inception, and declining to withdraw the reference).

<u>Fourth</u>, withdrawing the reference to this Court does not implicate forum shopping concerns. Seeking to place a matter before a court that is "well-practiced" in the relevant claims to be considered is a valid basis to seek withdrawal of the reference. *See Int'l Benefits Grp.*, 2006 WL 2417297, at *4. Further, as noted, the efficiencies that would arise from having this Court handle discrete matters related to the underlying talcum powder-related claims was among the very reasons that this Case was transferred to this District. Withdrawing the reference is simply actualizing this goal.

## B. <u>Other Considerations, On Balance, Weigh In Favor Of Withdrawal.</u>

Two other factors bear on the Court's analysis. First, the timing of this request favors withdrawal. The Bankruptcy Case and Adversary Proceeding are only weeks old, and were only very recently transferred to this District. The Bankruptcy Court has not had any substantive hearings or conferences in the Adversary Proceeding, or made any substantive rulings. There has been no significant motion practice or discovery. In short, the Bankruptcy Court has not invested material time or resources with the Adversary Proceeding (or the Bankruptcy Case). For these reasons, this request is timely. *Schlein v. Golub (In re Schlein)*, 188 B.R. 13, 14 (E.D. Pa. 1995) ("The purpose of the timeliness provision is to prevent unnecessary delay and stalling tactics."); *Troisio v. Poirier (In re U.S.A. Floral Products, Inc.)*, No. 01–1230 (MFW), ADV. 03–52514,

Civ.A. 05–00039–KAJ, 2005 WL 3657096, at *1 (D. Del. July 1, 2005) (timeliness is "measured by the stage of the proceedings in the Bankruptcy Court" (internal quotation marks omitted)).

Finally, an additional factor considered by courts is whether the proceeding to be withdrawn is a "core" or "non-core"[6] bankruptcy proceeding. *See, e.g.*, *G-I Holdings*, 295 B.R. at 216.[7]  The North Carolina Bankruptcy Court, in its PI Order, found this to be a "core" matter, although it cautioned that it did not intend to bind any future Court and expected future courts to take a fresh look at his rulings.  Regardless, the "core"/"non-core" designation is not dispositive and withdrawal of the reference is appropriate here.  *See Karagjozi v. Bruck*, Civ. No. 17-6305, 2017 WL 4155104, at *3 (D.N.J. Sept. 20, 2017) (noting that core/non-core distinction is not dispositive); *Pittsburgh Corning Corp.*, 277 B.R. at 78 ("Notwithstanding the strong presumption against withdrawal of the reference of core bankruptcy proceedings, the presumption can be overcome 'based on a finding by the Court that the withdrawal of reference is essential to preserve a higher interest.'" (quoting *Pan Am Corp.*, 163 B.R. at 43)).

As noted, identifying whether and to what extent the Debtor seeks to enjoin direct claims against non-debtor entities will be critical to resolution of this Adversary Proceeding.  Regardless

---

[6]    A proceeding is "core" "if it invokes a substantive right provided by Title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Torkelsen v. Maggio (In re Guild and Gallery Plus, Inc.)*, 72 F.3d 1171, 1178 (3d Cir.1996).  A proceeding is "non-core" if it is "an action that does not depend upon the bankruptcy laws for its existence and which could proceed in a court that lacks federal bankruptcy jurisdiction." *Innovasystems, Inc. v. Proveris Scientific Corp.*, Civil Action No. 13–05077, 2013 WL 5539288, at *3 (D.N.J. Oct. 7, 2013) (quoting *United Orient Bank v. Green*, 200 B.R. 296, 298 (S.D.N.Y. 1996)).

[7]    Some courts within this Circuit consider this to be a threshold issue in determining whether permissive withdrawal is appropriate.  *See, e.g.*, *Dwek*, 2010 WL 2545174, at *4.  Other courts have concluded that it is a determination that must be made by the bankruptcy before a motion to withdraw the reference is ripe for review.  *See Katz v. Karagjozi (In re Kara Homes, Inc.)*, Bankruptcy No. 06-19626 (MBK), Adv. Proc. No. 08-2406 (MBK), Civil Action No. 09-1775 (MLC), 2009 WL 2223035, at *2 (D.N.J. July 22, 2009).  The Third Circuit has not weighed in on this two-step approach, and other decisions within the Circuit cast doubt on whether it is necessary.  *See Innovasystems*, 2013 WL 5539288, at *4 ("Nothing in the statute, however, precludes the district court, from which the entirety of the Bankruptcy Court's docket originates, from making the determination itself if the matter was not first presented to the bankruptcy judge." (citations omitted)).  Of relevance here, this approach may also cause needless delay when expediency is critical for affected claimants.  Moreover, as noted above and explained further *supra*, the North Carolina Bankruptcy Court previously determined that this proceeding was Core.  *See PI Order* ¶ D.

of whether a request to extend the stay under 11 U.S.C. § 362(a) or for an injunction under 11 U.S.C. § 105 are core proceedings in a general sense, the bankruptcy court is without jurisdiction to seek to stay or enjoin such direct claims between two non-debtor entities. In *In re Combustion Engineering, Inc.*, 391 F.3d 190 (3d Cir. 2004), the Third Circuit held that a § 105(a) injunction could not be applied to "independent non-derivative claims against non-debtor third parties," because it "would improperly extend bankruptcy relief to non-debtors." 391 F.3d at 234. Indeed, the Third Circuit has repeatedly held that "related to" bankruptcy jurisdiction is absent over direct claims against non-debtors that are not derivative of the debtor's liability. *See In re Federal–Mogul Global, Inc.*, 300 F.3d 368, 382 (3d Cir. 2002); *Pacor, Inc. v. Higgins*, 743 F.2d 984, 995 (3d Cir. 1984), overruled on other grounds, *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995). In other words, because direct claims against the Alleged Protected Parties may be outside the scope of the bankruptcy court's authority altogether, that a stay or injunction is otherwise a core proceeding does not present a reason to decline to withdraw the reference in this instance.

Moreover, the purpose of identifying whether a proceeding is core or non-core is, as with the *Pruitt* factors, a question of efficiency. In a non-core proceeding, the bankruptcy court must, absent consent, "submit proposed findings of fact and conclusions of law to the district court for de novo review and the entry of final judgment." *Drs. Assocs., Inc. v. Desai*, No. Civ. Action No. 10-575, 2010 WL 3326726, at *3 (D.N.J. Aug. 23, 2010). Accordingly, having made a determination that a proceeding is non-core, courts often recognize the inherent inefficiency of sending the proceeding to the bankruptcy court only to face the possibility of later review, and elect to withdraw the reference. *See, e.g.*, *Ramex Int'l*, 91 B.R. at 316 (noting that de novo review may require a second jury trial, which would be "cumbersome" and "time consuming"). Alternatively, if a proceeding is core, it may be returned to the bankruptcy court that would be

more familiar with the facts and issues. *See, e.g.*, *In re LightSquared Inc.*, No. 14 Civ. 8550(RMB), 2014 WL 6386734, at *2 (S.D.N.Y. Nov. 10, 2014) (citing *In re Recoton Corp.*, No. 04 Civ. 2466(DLC), 2004 WL 1497570, at *4 (S.D.N.Y. July 1, 2004)).

Here, however, as explained above, this Court is uniquely familiar with the facts and legal issues relevant to resolution of this Adversary Proceeding. In contrast, the Bankruptcy Court is new to the proceeding. The efficiency that would result from this Court hearing the Adversary Proceeding, and the benefits to claimants and the estate flowing from that efficiency, cuts in favor of withdrawing the reference.

<b><u>CONCLUSION</u></b>

For the foregoing reasons, the Official Committee respectfully requests that this Court grant the Motion and enter an order, substantially in the form annexed hereto, withdrawing the reference to the Bankruptcy Court of the above-captioned Adversary Proceeding, and granting such other and further relief as the Court deems just and proper.

Dated: November 24, 2021

Respectfully submitted,

*/s/ Daniel M. Stolz*
Angelo J. Genova, Esq.
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
Matthew I.W. Baker, Esq.
**GENOVA BURNS LLC**
110 Allen Road
Suite 304
Basking Ridge, NJ 07920
Tel: 973-467-2700
Fax: 973-467-8126
Email: agenova@genovaburns.com
        dstolz@genovaburns.com
        dclarke@genovaburns.com
        mbaker@genovaburns.com

David J. Molton
Robert J. Stark
Jeffrey L. Jonas
Michael Winograd
**BROWN RUDNICK LLP**
7 Times Square
New York, NY 10036
Tel: 212-209-4800
Fax: 212-209-4801
Email: dmolton@brownrudnick.com
      rstark@brownrudnick.com
      jjonas@brownrudnick.com
      mwinograd@brownrudnick.com
-and-
Sunni Beville
One Financial Center
Boston, MA 02111
Tel: 617-856-8200
Fax: 617-856-8201
Email: sbeville@brownrudnick.com


Brian A. Glasser
Thomas B. Bennett
**BAILEY GLASSER LLP**
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC  20007
Tel: 202-463-2101
Fax: 202-463-2103
Email: bglasser@baileyglasser.com
      tbennett@baileyglasser.com

Jonathan S. Massey
**MASSEY & GAIL LLP**
1000 Maine Avenue SW
Suite 450
Washington, DC 20024
Tel: 202-652-4511
Fax: 312-379-0467
Email: jmassey@masseygail.com


Melanie L. Cyganowski
Adam C. Silverstein
Jennifer S. Feeney
**OTTERBOURG P.C.**
230 Park Avenue
New York, NY 10169
Tel: 212-905-3628
Fax: 212-682-6104
Email: mcyganowski@otterbourg.com
      asilverstein@otterbourg.com


Lenard M. Parkins
Charles M. Rubio
**PARKINS LEE & RUBIO LLP**
Pennzoil Place
700 Milam Street
Suite 1300
Houston, Texas 77002
Phone: 713-715-1666
Email: lparkins@parkinslee.com
crubio@parkinslee.com


*Proposed Co-Counsel for the Official Committee of Talc Claimants*