| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>**OFFIT KURMAN, P.A.**<br>Paul J. Winterhalter, Esquire (006961986)<br>99 Wood Avenue South, Suite 302<br>Iselin, New Jersey 08830<br>Telephone:     (267) 338-1370<br>Facsimile:      (267) 338-1335<br>E-mail:          pwinterhalter@offitkurman.com<br><br>**KTBS LAW LLP**<br>Michael L. Tuchin, Esq. (*Pro Hac Vice*)<br>Robert J. Pfister, Esq. (*Pro Hac Vice*)<br>Samuel M. Kidder, Esq. (*Pro Hac Vice*)<br>Nir Maoz, Esq. (*Pro Hac Vice*)<br>1801 Century Park East, 26th Floor<br>Los Angeles, California 90067<br>Telephone:     (310) 407-4000<br>Facsimile:      (310) 407-9090<br>Email:             mtuchin@ktbslaw.com<br>                      rpfister@ktbslaw.com<br>                      skidder@ktbslaw.com<br>                      nmaoz@ktbslaw.com<br><br>*Attorneys for Aylstock, Witkin, Kreis & Overholtz, PLLC* | |
| In re:<br><br>LTL MANAGEMENT LLC,[1]<br><br>                                        Debtor. | Chapter 11<br><br>Case No.:  21-30589 (MBK)<br><br>Judge: Michael B. Kaplan |
| LTL MANAGEMENT LLC,<br><br>                                        Plaintiff.<br><br>v.<br><br>THOSE PARTIES LISTED ON APPENDIX A TO COMPLAINT and JOHN AND JANE DOES 1-1000,<br><br>                                        Defendants. | **Hearing Date and Time:**<br>January 11, 2021 at 10:00 a.m.<br><br>Adv. Proc. No. 21-03032 (MBK)<br><br>**Re: Adv. Docket No. 2, 58, 128** |

### OPPOSITION OF AYLSTOCK, WITKIN, KREIS & OVERHOLTZ PLLC TO DEBTOR'S REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

Aylstock, Witkin, Kreis & Overholtz, PLLC ("AWKO"), on behalf of thousands of holders of talc personal injury claims (the "AWKO Claimants"), hereby opposes the *Debtor's Motion for an Order (I) Declaring That the Automatic Stay Applies to Certain Actions Against Non-Debtors or (II) Preliminarily Enjoining Such Actions and (III) Granting a Temporary Restraining Order Pending a Final Hearing* [Adv. Docket No. 2] (the "Motion"), as supplemented by the *Debtor's Supplemental Memorandum of Law in Support of Preliminary Injunction Motion* [Adv. Docket No. 128] (the "Supplemental Brief").[2]

## PRELIMINARY STATEMENT

1. If Johnson & Johnson ("J&J") wants the benefits and protections of the Bankruptcy Code's automatic stay, J&J can file its own bankruptcy petition and thereby subject its assets and conduct to the full scrutiny of the bankruptcy process. J&J has not done so, and instead seeks to secure the exact same result – a broad stay of all litigation against it – by a brazen series of corporate maneuvers (the "Texas Two-Step") that constitute an actual-intent fraudulent transfer. The internal J&J memorandum by which the "restructuring" was approved lists the first "rationale[]" and "benefit[]" of the Texas Two-Step as: "All lawsuits asserting Claims to be immediately and automatically stayed." Ex. K (10/11/21 J&J Memo) at 5. This is a stark admission that the transfers made as part of the Texas Two-Step were, at a minimum, made with the express intent to "delay" creditors. *See* 11 U.S.C. § 548(a)(1)(A) ("actual intent to hinder, delay, *or* defraud" creditors – in the disjunctive (emphasis added)).

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Supplemental Brief. AWKO also joins the objection [Adv. Docket No. 142] (the "TCC Objection") filed by the Official Committee of Talc Claimants (the "TCC"), as well as other objections filed or to be filed by other interested parties opposing the relief sought in the Motion, including all declarations and other evidence tendered therewith, to the extent relevant and consistent herewith. Citations to "Ex. __" are to the exhibits to the declaration that accompanies the TCC Objection.

2. The Motion asks this Court to validate and give effect to this fraudulent transfer. The Court should not do so. The automatic stay applies by its own force to actions "against the debtor" or "to recover a claim against the debtor," 11 U.S.C. § 362(a)(1), or to recover "property of the estate," 11 U.S.C. § 362(a)(3). Here, neither the AWKO Claimants nor any other plaintiffs suing J&J are in reality trying to proceed against this Debtor or its property. Instead, they are attempting to recover from J&J itself. J&J is not a debtor, and J&J's property is not protected by the automatic stay. Accordingly, Bankruptcy Code section 362(a) is inapplicable.

3. The case law relied on in the Motion and the Supplemental Brief, such as *A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986) ("Robins"), addresses an entirely different situation. In *Robins* and cases like it, the debtor itself was the plaintiff's actual target and the plaintiff was attempting to circumvent the automatic stay by instead suing non-debtors, such as directors, officers, insurers, and the like. In that narrow and specific circumstance, courts have found that actions against non-debtors may implicate the automatic stay. But that is not what is happening here. No plaintiff suing J&J secretly hopes to secure a judgment against "LTL Management LLC" – an entity that did not even exist before October 12, 2021.

4. Nor is relief warranted under Bankruptcy Code section 105. That source of authority requires a balancing of the likelihood of the Debtor's successful reorganization (highly speculative at best) against the immediate, concrete, and indisputable harm that will be visited on talc claimants if their cases are stayed. The inquiry takes into account the public interest, and is conducted against the background principle that preliminary injunctive relief is "extraordinary" and should be granted "only sparingly and in limited circumstances." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

5. In undertaking the balancing required by section 105, the Court must assess the likelihood that a scheme orchestrated by one of the most solvent enterprises in the world to hinder and delay its creditors will ultimately result in a successful reorganization. That assessment should take into account the low odds of peace breaking out to deliver the super-majority of creditor support required under Bankruptcy Code section 524(g) (which is admittedly the Debtor's only game plan), as well as the ample tools available to creditors to challenge J&J's machinations, including dismissal for cause (for which a hearing has been scheduled for February 15, 2021), as well as derivative standing, substantive consolidation, and other remedial measures. When these circumstances are accounted for, the likelihood of a successful reorganization here is close to zero.

6. Nor is there any irreparable harm. J&J is one of the most solvent enterprises in the world, and is fully capable of defending litigation brought against it for its own misconduct. The equities tip decidedly in favor of allowing talc claimants to continue their cases against J&J for J&J's own independent misconduct. Adding the public interest into the mix solidifies the conclusion that no preliminary injunctive relief is warranted here, as there is "no public policy interest in aiding a fraud on creditors." *In re DBMP LLC*, 2021 WL 3552350, at *42 (Bankr. W.D.N.C. Aug. 11, 2021) ("*DBMP*"); *In re Aldrich Pump LLC*, 2021 WL 3729335, at *38 (Bankr. W.D.N.C. Aug. 23, 2021) ("*Aldrich*").

**FACTUAL BACKRGOUND**

7. Relevant factual background regarding the prepetition litigation against J&J and its affiliates, the "divisional merger," and the dubious circumstances surrounding this bankruptcy filing is set forth in the *Initial Statement of Official Committee of Talc Claimants Respecting Chapter 11 Case* [Bankr. Docket No. 489] and the *Motion of the Official Committee of Talc*

4

*Claimants to Dismiss Debtor's Chapter 11 Case* [Bankr. Docket No. 632]. That factual background is incorporated herein by reference.

8. In addition, AWKO respectfully refers the Court to the documentary and testimonial evidence already adduced in the North Carolina bankruptcy court at the emergency hearing held on October 22, 2021 and the preliminary injunction hearing on November 4 and 5, 2021, including the evidence offered by the Debtor itself (such as the declarations and testimony of Mr. Kim). This evidence reflects that:

- J&J has its own direct liability to talc plaintiffs such as the AWKO Claimants, separate from and independent of the Debtor's liability;

- The Debtor's position that all of J&J's talc-related liabilities were transferred to or are siloed in the Debtor or its predecessors rests on hotly contested facts about decades-old corporate transactions for which there is incomplete or missing documentation; and

- Any assertions of "shared insurance" between and among members of the J&J corporate family are highly speculative insofar as no insurer has acknowledged any coverage obligations or defended or indemnified any entity in the Debtor's corporate family for settlements or judgments related to talc.

**ARGUMENT**

**A.    Talc-Related Litigation Against Non-Debtors is Not Automatically Stayed**

9. Section 362(a)(1) prohibits the "commencement or continuation … of a judicial … proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." Section 362(a)(3) stays suits involving

5

the "possession" or "control" of property of the debtor. Neither section 362(a)(1) nor 362(a)(3) applies here.

10. "[T]he clear language of section 362(a) stays actions only against a 'debtor.'" *McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 509 (3d Cir. 1997). Absent "unusual circumstances," courts decline to extend the benefits of the automatic stay to non-debtors. *See, e.g., id.* at 510 (collecting cases); *see also, e.g.*, In re Strak, 2018 Bankr. LEXIS 3936, at *5 (Bankr. D.N.J. Dec. 11, 2018) (observing that "[i]t is a black letter bankruptcy principle that 11 U.S.C. § 362(a) does not create a general, automatic stay of a creditor's right to assert claims against non-debtor parties who are related to the debtor in some fashion" and declining to extend automatic stay to limited liability company owned by the debtor); *In re Aldan Indus.*, 2000 Bankr. LEXIS 342, at *10-12 (Bankr. E.D. Pa. Apr. 3, 2000) (noting that "as a general rule, the automatic stay does not affect proceedings against guarantors" and declining to extend stay to non-debtor guarantor).

11. In both the Motion and the Supplemental Brief, the Debtor argues that "unusual circumstances" exist here, grounding its argument in *Robins*, the seminal case on the application or extension of the automatic stay to non-debtors. But in *Robins*, the debtor itself was the primary alleged tortfeasor, the primary named defendant in the personal injury litigation at issue, and the primary owner of the insurance coverage applicable to the personal injury claims. The Fourth Circuit was confronted with a situation where certain plaintiffs sought to evade the automatic stay that indisputably applied to the debtor by instead electing to proceed with claims against secondary or tertiary parties. It was in that specific factual context that the court concluded the plaintiffs were barred from pursuing their claims against non-debtors on an "identity of interests" analysis. *Id.* at 999.

12. This case is not *Robins*. Here, the Debtor is a newly-confected creation "designed to ferry" another solvent enterprise's "liabilities into bankruptcy." *DBMP*, 2021 WL 3552350, at *13. The machinations that created the Debtor – including rapid-fire corporate actions across multiple jurisdictions and a web of funding and services agreements – are specifically and admittedly tailored to exploit the Debtor's alleged separateness to the extent such separateness benefits J&J, while at the same time keeping the Debtor just close enough so that J&J (and hundreds of other putative "Protected Parties") can avail themselves of the *Robins* "identity of interests" language.

13. The *Robins* decision and the "identity of interests" language therein is not a section of the Bankruptcy Code that can be mechanically and a-textually applied; rather, "it is just an explanation for the Court's disposition." *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010). "Judicial opinions must not be confused with statutes, and general expressions must be read in light of the subject under consideration." *Id*. Explanatory expositions such as the "identity of interests" reasoning of *Robins* thus cannot be applied in the abstract, without consideration of the specific facts and circumstances before a court.

14. Here, the Court can and should take into account all the relevant circumstances to assess whether a solvent enterprise such as J&J can confect a new debtor entity to take advantage of that entity's automatic stay without subjecting the enterprise itself to the bankruptcy process of which the stay is merely one integral part. To ask the question is to answer the question. *Cf. Pepper v. Litton*, 308 U.S. 295, 305 (1939) ("The bankruptcy courts have exercised the[ir] equitable powers … to the end that fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done." (footnote omitted)).

**B.    The Court Should Not Grant Preliminary Injunctive Relief**

15.     Preliminary injunctions are "extraordinary remedies" that should be granted "only sparingly and in limited circumstances." *Winter*, 555 U.S. at 22.  To obtain such relief, the Debtor must make "a clear showing" that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in the Debtor's favor, and that an injunction is in the public interest.  *Id.* at 20.  In bankruptcy, success on the merits is to be evaluated in terms of the likelihood of a successful reorganization.  *See, e.g.*, *In re G-1 Holdings Inc.*, 420 B.R. 216, 281 (Bankr. D.N.J. 2009) (evaluating the "reasonable likelihood of a successful plan of reorganization").

16.     J&J is among the most solvent, liquid, and profitable corporations in the world.  It is capable of answering for its own direct liability to talc plaintiffs, as it has been doing for years.  There is no reason to upset that status quo now – especially not to facilitate the "reorganization" of a newly-created entity with no employees, no operations, and no realistic prospect that a super-majority of creditors will vote in favor of a channeling injunction under Bankruptcy Code section 524(g).

17.     The far more likely trajectory of this case is dismissal for cause.[3]  Two motions to dismiss are already on file,[4] and AWKO intends to file its own motion shortly.  Barring that, the active and engaged creditor body in this case is likely to secure derivative standing to pursue fraudulent transfer claims against J&J and JJCI, to seek substantive consolidation of non-debtors JJCI and/or J&J into the bankruptcy estate, *see Sampsell v. Imperial Paper & Color Corp.*, 313

---

[3] *See, e.g.*, *In re SGL Carbon Corp.*, 200 F.3d 154, 162 (3d Cir. 1999) (holding that "a Chapter 11 petition is subject to dismissal for 'cause' under 11 U.S.C. § 1112(b) unless it is filed in good faith.").

[4] *See Motion of the Official Committee of Talc Claimants to Dismiss Debtor's Chapter 11 Case* [Bankr. Docket No. 632]; *Motion to Dismiss* [Bankr. Docket. No. 766].

8

U.S. 215, 217-19 (1941) (ordering consolidation upon finding that corporate debtor "was formed for the purpose of hindering, delaying and defrauding … [the non-debtor's] creditors"),[5] and to exercise other tools provided by the Bankruptcy Code to remedy what they correctly perceive to be an affront to the bankruptcy process.  *Cf.* Garrard Glenn, The Law of Fraudulent Conveyances, § 43 (Rev. ed. 1940) ("The fraudulent conveyance is nothing but an offense against the creditor's right to realize his debt [and] the collective right of creditors to a fair distribution of their debtor's estate").

18. It is true, of course, that at this early stage of the case, the motions to dismiss are still pending and there are no currently pending requests for derivative standing, substantive consolidation, or other remedies.  But the fact that such relief has not yet been granted does not mean that the Court should presume that this chapter 11 case is likely to succeed.  Filed and fully briefed and argued motions are not the *sine qua non* of likely entitlement to relief.  (Or, more colloquially, there is not always a need for a weatherman to know which way the wind is blowing.)

19. Nor has the Debtor shown any likelihood of irreparable harm.  Given J&J's unquestioned solvency and funding commitment, there is no concrete or particularized harm to the Debtor in permitting litigation to proceed against J&J in the ordinary course.  Any indemnification obligations on the part of the Debtor are speculative at best (given the independent liability of J&J) and may well be subject to recharacterization, subordination, or other appropriate treatment.  By contrast, the harm to plaintiffs of a preliminary injunction is real

---

[5] *See also, e.g., In re Clark*, 548 B.R. 246, 249 (B.A.P. 9th Cir. 2016), *aff'd*, 692 F. App'x 946 (9th Cir. 2017); *In re Bonham*, 229 F.3d 750, 765 (9th Cir. 2000); *In re Auto-Train Corp.*, 810 F.2d 270, 275 (D.C. Cir. 1987); *In re Munford, Inc.*, 115 B.R 390, 395-96 (Bankr. N.D. Ga. 1990); *In re Tureaud*, 59 B.R. 973, 974, 978 (N.D. Okla. 1986); *In re Giller*, 962 F.2d 796, 798-99 (8th Cir. 1992); *Kapila v. S&G Fin. Servs, LLC (In re S&G Fin. Servs. of S. Fla., Inc.)*, 451 B.R. 573, 585 n.14 (Bankr. S.D. Fla. 2011); *In re Logistics Info. Sys., Inc.*, 432 B.R. 1, 12 (D. Mass. 2010).

and immediate. A plaintiff's sole and exclusive leverage is his or her ability to use the legal process to seek compensation for harm. Halting all such litigation is not a mere temporary pause; it is the equivalent of cutting the plaintiff off at the knees.

20. Finally, considerations of the public interest weigh heavily against preliminary injunctive relief. There is "no public policy interest in aiding a fraud on creditors." *DBMP*, 2021 WL 3552350, at *42; *Aldrich*, 2021 WL 3729335, at *38. Shielding J&J from lawsuits seeking recompense for J&J's own independent conduct would, among other things, greatly undermine public confidence in the bankruptcy system by appearing to reward gamesmanship.[6]

[The remainder of this page is blank.]

---

[6] *See* Jamie Smyth, "Johnson & Johnson's 'Texas-two-step' sparks outcry over US bankruptcy regime", *The Financial Times* (October 27, 2021), *available at* https://www.ft.com/content/de13b1ec-9b4a-4a27-ae63-c8ea38ffc683; Adam Levitin, "The Texas Two-Step: The New Fad in Fraudulent Transfers", *Credit Slips* (July 19, 2021), *available at* https://www.creditslips.org/creditslips/2021/07/the-texas-two-step.html; *see also* Written Testimony of Adam J. Levitin, "Oversight of the Bankruptcy Code, Part I: Confronting Abuses of the Chapter 11 System" (July 28, 2021), *available at* https://docs.house.gov/meetings/JU/JU05/20210728/113996/HHRG-117-JU05-Wstate-LevitinA-20210728.pdf.

## CONCLUSION

21. For all the reasons set forth above, the Motion should be denied.

DATED: December 22, 2021

Respectfully submitted,

**OFFIT KURMAN, P.A.**

/s/ Paul J. Winterhalter
Paul J. Winterhalter, Esquire (006961986)
99 Wood Avenue South, Suite 302
Iselin, New Jersey 08830
Telephone:    (267) 338-1370
Facsimile:     (267) 338-1335
E-mail:          pwinterhalter@offitkurman.com

- and -

**KTBS LAW LLP**
Michael L. Tuchin (*pro hac vice*)
Robert J. Pfister (*pro hac vice*)
Samuel M. Kidder (*pro hac vice*)
Nir Maoz (*pro hac vice*)
1801 Century Park East, 26th Floor
Los Angeles, California 90067
Telephone:    (310) 407-4000
Facsimile:     (310) 407-9090
Email:           mtuchin@ktbslaw.com
                    rpfister@ktbslaw.com
                    skidder@ktbslaw.com
                    nmaoz@ktbslaw.com

*Attorneys for Aylstock, Witkin, Kreis & Overholtz, PLLC*